United States District Court
District of Columbia

AFFIDAVIT OF SPECIAL AGENT JOHN ARCHER IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT

Your affiant, John Archer, a Special Agent with the Drug Enforcement Administration, being duly sworn, hereby depose and state as follows:

A. Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant for a certain account controlled by the free web-based electronic mail service provider known as MSN Hotmail headquartered at 1065 La Avenida, Building 4, Mountain View, California 94043. The accounts to be searched are ROLEXSTAAL@HOTMAIL.COM AND BAMIVRIEND@HOTMAIL.COM, which are further described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that on the computer systems of MSN Hotmail (also referred to as "Hotmail"), there exists evidence of the whereabouts of a person to be arrested for violations of Title 21 United States Code, Sections 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy).

2. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Bilateral Case Group, Special Operations Division. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

1

3. I have been employed by the Drug Enforcement Administration (DEA) as a Special Agent for over eight years and am currently assigned to the DEA, Special Operations Division in Virginia. Prior to that, I was employed as a Deputy United States Marshal in the District of Columbia for approximately 2 years. I received sixteen weeks of training at the DEA Academy in Quantico, Virginia, and have received extensive training pertaining to narcotic investigations and the various crimes which arise from drug trafficking activities.

4. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions.

5. I have participated in and conducted investigations of various State and federal criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of a communication facility to commit narcotics offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including marijuana, cocaine, heroin and MDMA, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. I am familiar with the precursor chemicals used to manufacture MDMA and methamphetamine. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.

6. I have also conducted investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents. I have also participated in the debriefings of many of those individuals arrested who later cooperated with the Government.

7. I have directed numerous confidential informants and cooperating witnesses to successfully infiltrate various-sized narcotics enterprises via intelligence gathering, participation in consensual recordings and monitored purchases of controlled substances. I have executed search warrants for controlled substances and I have conducted surveillance in connection with numerous narcotics investigations.

8. I am familiar with the operations of illegal international drug trafficking organizations in various parts of the world, including Asia and Europe.

9. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. My training and experience as a Special Agent of the DEA, my conversations with other Special Agents of the DEA, foreign law enforcement, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

10. In my training and experience, I have learned that Hotmail is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for Hotmail subscribers may be

3

located on the computers of Hotmail. Further, I am aware that computers located at Hotmail contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seek authorization solely to search the computer accounts and/or files and following the procedures described herein and in Attachment A.

## B. Background Regarding Computers, the Internet, and E-mail

11. The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

12. Based on my training, experience and knowledge, I know the following:

   a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, and individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

   b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

   c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated

4

at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

### C. MSN Hotmail

13. Based on my training and experience, I have learned the following about Hotmail :

a. Hotmail is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with MSN Hotmail. MSN Hotmail requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information. However, MSN Hotmail does not verify the information provided;

b. MSN Hotmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

c. Subscribers to MSN Hotmail may access their accounts on servers maintained and/or owned by Hotmail from any computer connected to the Internet located anywhere in the world;

d. Any e-mail that is sent to an MSN Hotmail subscriber is stored in the subscriber's "mailbox" on MSN Hotmail's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by MSN Hotmail. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the

5

account periodically, that message can remain on MSN Hotmail's servers indefinitely;

  e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to MSN Hotmail's servers, and then transmitted to its end destination. MSN Hotmail users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the MSN Hotmail server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at MSN Hotmail, but that message will remain in the recipient's e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

  f. An MSN Hotmail subscriber can store files, including e-mails and image files, on servers maintained and/or owned by MSN Hotmail; and

  g. E-mails and image files stored on a MSN Hotmail server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the MSN Hotmail server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the MSN Hotmail server.

///
///

**D. Stored Wire and Electronic Communication Access**

14. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

a) Title 18, United States Code, Section 2703(a), provides:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b) Title 18, United States Code, Section 2703(b), provides, in part:

> (1) A government entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
> (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
> (2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -
> (A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
> (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

7

c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

> As used in this chapter -
> (1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
> (2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

e) Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
> (15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
> (17) "electronic storage" means -
>> (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
>> (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

///
///

**E. Search Procedure**

15. In order to ensure that Agents search only those computer accounts and or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of MSN Hotmail to assist agents in the execution of this warrant. To further ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

    a. The search warrant will be presented to MSN Hotmail personnel who will be directed to isolate those accounts and files described in Attachment A;

    b. In order to minimize any disruption of computer service to innocent third parties, MSN Hotmail employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment A, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[1]

    c. MSN Hotmail employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

    d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from MSN Hotmail employees and then identify and copy the

---

[1] The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional. United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

9

information contained in those accounts and files which are authorized to be further copied by this search warrant; and

e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from MSN Hotmail employees and will not further review the original duplicate absent an order of the Court.

## F. Basis for Facts Contained in this Affidavit

16. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from the following sources:

   a. Oral and written reports about this investigation and others that I have received from United States and Dutch, Hong Kong and Czech Republic law enforcement officers, including Special Agents of the Drug Enforcement Administration;

   b. Physical surveillance conducted by Dutch, Czech Republic and Hong Kong authorities, which observations have been reported to me either directly or indirectly;

   c. Intercepted e-mail messages:

   d. Telephonic and fax intercepts conducted by Dutch and Czech Republic authorities;

   e. A review of log history and Internet Protocol addresses for certain e-mail accounts described below.

17. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and, unless indicated as direct quotations, are stated in substance. Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

18. I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

**G. Probable Cause**

19. On September 20, 2005, U.S. Magistrate Judge John M. Facciola, United States District Court for the District of Columbia, signed a search warrant (the "September 20 Warrant") for the following e-mail accounts: rolexstaal@hotmail.com, pyamavriend@hotmail.com and rolexchanlee@hotmail.com. A copy of the September 20 Warrant and supporting affidavit is included in the present affidavit as Attachment B, which I incorporate by reference.

20. Hotmail forwarded to DEA the requested information contained in these accounts. The DEA Special Operations Division had all of these e-mails translated from Dutch into English. In the "rolexstaal" account was an e-mail from bamivriend@hotmail.com sent to the "rolexstaal" account on September 7, 2005. This e-mail stated, "I've spoken with your friend and heard it's better they must find out. But that's the problem. A little later when I explained we noticed your friend knows nothing about the way it's going. So now he knows he knows he's going to talk to the other friend R but he's gone for a week so that's going to be a bit later. I heard about your other friend. That's fucked up. I'm going to tell pyamafriend about it. He thinks he will get it today. Talk to you later friend." Based on the ongoing Dutch investigation, I believe that the author of this e-mail is referring to a delivery of 3,4-methylenedioxyphenylactone, or "PMK" (a precursor chemical used in the manufacture of MDMA) from Hong Kong to Holland. I believe that "your friend" refers to an associate of the "rolexstaal" account. I further believe that the author of the e-mail is concerned that the "rolexstaal" account's "friend" does not know the manner by which the PMK is being sent and that this friend is going to be unable to be contacted for a week in order to get the information that is needed.

21. On September 10, 2005, the "rolexstaal" account sent the "bamivriend" account an e-mail. This e-mail stated, "Hi friend. I've spoken to pyama and understand they will wait for a better offer and the rest I've just contacted and the offer will be the same so the situation isn't changed. Let me know if it is yes or no. Fucking made a lot of work and asked me to make a favour to my friend but it is like it is. Sure wait for the telephone of bamivriend. Greetings

12

amigo." Based on the Dutch investigation, I believe that the author of the "rolexstaal" account is an associate of the organization responsible for shipping the PMK to "bamivriend." I believe that "pyama" is likely Yun Lam YUEN, a PMK broker in Hong Kong, or one of his associates. I believe that pyama was attempting to get more PMK for "bamivriend" but then decided to wait for a "better offer," possibly a better price from another Hong Kong distributor. I further believe that the author of the "rolexstaal" meant that the price for the other order of PMK had not changed and was asking if "bamivriend" still wanted to do this transaction.

22. On September 12, 2005, "bamivriend" sent an e-mail to "rolexstaal." This e-mail stated, "Ok, will say that he must hurry, here is the customer nr 23076634. The 15th there is a friend of mine around one at your vicinity. He is going back the 18th. It would be great if we could talk about it. There are some possibilities it could be something. At what time are you back Sunday, then I have a look to get in touch. I'll be there too, will score another fish on the beach. You can send me a SMS what time, one ride less. Wednesday I see your other friend, then we can go further with that. Speak to you later friend." I believe that the customer number that "bamivriend" provided was a telephone number for "rolexstaal" to contact regarding an order of PMK. I believe that "bamivriend" wanted to meet with "rolexstaal" in person to talk about future PMK transactions. I further believe that "rolexstaal" was planning on meeting "bamivriend's" associate to discuss another drug-related matter.

23. On September 12, "rolexstaal" sent a reply to "bamivriend". This e-mail stated, "Thanks friend, I am back at 1900 but it is possible the 15th too, the 16th leave in the morning. Greetings amigo." I believe that the author of the "rolexstaal" e-mail wanted to meet with

13

"bamivriend" or one or more associates in person, likely to discuss the arrangements for the delivery of PMK.

24. On October 6, 2005, Dutch investigators accessed the "rolexstaal" account utilizing the password under the authority of a Dutch judge as set forth in the affidavit in support of the September 20 Warrant. see Attachment B affidavit at 11, ¶ 23. As mentioned in the September 20 affidavit, Dutch investigators do not regularly access this account in this manner because they can not be assured that the registered user would not be logged on at the same time and become cognizant of suspicious activity while in the account. From within the "rolexstaal" account, Dutch investigators found two e-mails in Dutch. The first was sent on October 4, 2005 from "rolexstaal" to "bamivriend". This e-mail stated, "Hi friend, everything ok, do you know your friend asked about the movie of Keetje tipple with the crazy Minna in it if I could get it there is a good possibility with KEes TAmmer like MInna which is transferred by a friend of mine. He can send it by mail only, the address where he delivers to doesn't matter. Let me know. Greetings." I believe that "rolexstaal" was using coded language with the words "Keetje tipple" and "Minna" and then again with "KEes TAmmer" and "MInna." Using the first letters of each of the words spells "KE-TA-MIn", or "ketamin", a Schedule III controlled substance, see 21 C.F.R. § 1308.13. I believe that "rolexstaal" has an associate who is capable of supplying ketamine and mailing it to customers.

25. The second e-mail located in the "rolexstaal" account by Dutch investigators was the reply from "bamivriend" to "rolexstaal". This e-mail stated, "Hello friend, I must think that I can rent the movie at the video store in my vicinity. If so is it possible to see a small piece, let

14

your friends contact, I inform mine, bye." I believe that "bamivriend" wanted to see if he had an ability to acquire the ketamine in his area first. I believe that both "bamivriend" and "rolexstaal" are attempting to broker this transaction for their associates.

26. The "bamivriend@hotmail.com" account was activated on July 21, 2005, ten days after the ""rolexstaal"" account was activated and one day after the "pyamavriend" account was activated. That account is listed to Piet Krediet with only the Netherlands listed as an address. The account was created in Holland. Piet Krediet translates as Pete Credit. I believe that like the other accounts mentioned, the "bamivriend" account was set up with a fictitious name to help conceal the identity of the user from law enforcement. Based on the above information, I believe that "rolexstaal" and "bamivriend" accounts were set up to facilitate communications regarding pending shipments of PMK and/or ketamine from China to Holland. I believe that the information stored in these e-mail accounts will further the continuing investigation into the AU Organization, see Attachment B affidavit at 10, ¶ 19, and may assist in identifying methods by which that organization transports MDMA and/or precursor chemicals into the United States. Letters have been sent to Hotmail requesting that the stored information in all three accounts be preserved in anticipation of this search warrant.

///
///

15

I. Request for Sealing

27. Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and all attachments thereto be filed under seal until further order of this Court. In addition, because notification of the existence of this order will seriously jeopardize an investigation, I request that the Court issue an order pursuant to 18 U.S.C. Section 2705(b) ordering Hotmail not to notify any person of the existence of the application, affidavit, search warrant and attachment, until directed to do so by the Court.

John Archer
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this _____ day of October, 2005.

OCT 14 2005

Honorable Deborah A. Robinson
United States Magistrate Judge

16