# ATTACHMENT B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

MSN Hotmail
at 1065 La Avenida
Mountain View, California 94043
E-mail Accounts:
    (1) ROLEXSTAAL@HOTMAIL.COM;
    (2) PYAMAVRIEND@HOTMAIL.COM;
    (3) ROLEXCHANLEE@HOTMAIL.COM
(Further described below)

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 05 - 050 - 01

I __John Archer__ being duly sworn depose and say:

I am a(n) __Special Agent with the Drug Enforcement Administration__ and have reason to believe
     (Official Title)
that ☐ on the person of or ☒ on the property or premises known as (name, description and or location)
stored electronic communications and content for accounts
ROLEXSTAAL@HOTMAIL.COM; PYAMAVRIEND@HOTMAIL.COM; and ROLEXCHANLEE@HOTMAIL.COM, maintained by MSN Hotmail, 1065 La Avenida, Mountain View, California in the Northern District of California, there is now concealed a certain person or property, namely (describe the person or property to be searched)
Electronic communications and content information described in Attachment A, incorporated by reference herein.

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
Evidence of a crime,

concerning a violation of Titles __21 and 18__ United States Code, Section(s) __§§952, 959, 963 and 1956__. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.  X YES  NO

Signature of Affiant
JOHN ARCHER, Special Agent
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence

SEP [illegible]

Date

at Washington, D.C.

Name and Title of Judicial Officer     Signature of Judicial Officer

AD-05-0014

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

MSN Hotmail
at 1065 La Avenida
Mountain View, California 94043
E-mail Accounts:
    (1) ROLEXSTAAL@HOTMAIL.COM;
    (2) PYAMAVRIEND@HOTMAIL.COM;
    (3) ROLEXCHANLEE@HOTMAIL.COM

**SEARCH WARRANT**

CASE NUMBER: 05 - 0504M - 01.

TO: ___Special Agent John Archer___ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _Special Agent John Archer_ who has reason to believe that ☐ on the person or ☒ on the premises known as (name, description and or location)

stored electronic communications and content for accounts ROLEXSTAAL@HOTMAIL.COM; PYAMAVRIEND@HOTMAIL.COM; and ROLEXCHANLEE@HOTMAIL.COM, maintained by MSN Hotmail, 1065 La Avenida, Mountain View, California.

in the Northern District of California, there is now concealed a certain person or property, namely (describe the person or property)

Electronic communications and content information described in Attachment A, incorporated by reference herein.

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before _September 30, 2005_
                                                                              (Date)
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search ☒(in the daytime - 6:00 A.M. to 10:00 P.M.)☐ (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to the undersigned U.S. Judge/U.S. Magistrate Judge, as required by law.

at Washington, D.C.

_____
Date and Time Issued

JOHN M. FACCIOLA
MAGISTRATE JUDGE
Name and Title of Judicial Officer

_John M. Facciola_
Signature of Judicial Officer

United States District Court
District of Columbia

AFFIDAVIT OF SPECIAL AGENT JOHN ARCHER IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT

Your affiant, John Archer, being duly sworn, hereby depose and state as follows:

A. Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant for certain accounts controlled by the free web-based electronic mail service provider known as MSN Hotmail headquartered at 1065 La Avenida, Mountain View, California 94043. The accounts to be searched are ROLEXSTAAL@HOTMAIL.COM; PYAMAVRIEND@HOTMAIL.COM; and ROLEXCHANLEE@HOTMAIL.COM, which are further described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that on the computer systems of MSN Hotmail, there exists evidence, fruits, and instrumentalities of violations of Title 21 United States Code, Section 952 (Importation of a controlled substance), Section 959(a) (Manufacture or distribution for purpose of unlawful importation) and Section 963 (Attempt and Conspiracy), Title 46, United States Code Appendix, Section 1903 (Manufacture, distribution and possession with intent to distribute controlled substances on board vessels) and Title 18, United States Code, Section 1956 (Laundering Monetary Instruments).

2. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Bilateral Case Group, Special Operations Division. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

3. I have been employed by the Drug Enforcement Administration ("DEA") as a Special Agent for over 8 ½ years, and am currently assigned to the DEA, Special Operation Division in

1

Chantilly, Virginia. Prior to that, I was employed as a Deputy United States Marshal in the District of Columbia for approximately 2 years. I received sixteen (16) weeks of training at the DEA Academy at Quantico, Virginia, and have received extensive training pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities.

4. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions.

5. I have participated in and conducted investigations of violations of various State and Federal criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of a communication facility to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and MDMA, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. I am also familiar with the precursor chemicals used to manufacture MDMA and methamphetamine. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs.

6. I have also conducted investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents. I have also participated in the debriefings of many of those individuals arrested who later cooperated with the Government.

7. I have directed numerous confidential informants and cooperating witnesses to successfully infiltrate various-sized narcotic enterprises via intelligence gathering, participation in consensual recordings and monitored purchases of controlled substances. I have executed search warrants for controlled substances and I have conducted surveillance in connection with numerous narcotic investigations.

8. I am familiar with the operations of illegal international drug trafficking organizations in various parts of the world, including Asia and Europe.

9. I am familiar with the ways in which narcotic traffickers conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. My training and experience as a Special Agent of the DEA, my conversations with other Special Agents of the DEA, foreign law enforcement, state and local investigators familiar with narcotics trafficking and money laundering matters, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein.

10. In my training and experience, I have learned that MSN Hotmail is a company that provides free web based Internet electronic mail ("e-mail") access to the general public, and that stored electronic communications, including opened and unopened e-mail for MSN Hotmail subscribers may be located on the computers of MSN Hotmail. Further, I am aware that computers located at MSN Hotmail contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrant seeks authorization solely to search the computer accounts and/or files by following the procedures described herein and in Attachment A.

B. Background Regarding Computers, the Internet, and E-mail

11. The term "computer" as used herein is defined in 18 U.S.C. 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

12. Based on my training, experience and knowledge, I know the following:

a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The World Wide Web ("www") is a functionality of the Internet, which allows users of the Internet to share information;

b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any means, including modem, local area network, wireless and numerous other methods; and

c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

### C. MSN Hotmail

13. Based on my training and experience, I have learned the following about Hotmail:

a. Hotmail is an e-mail service which is available free of charge to Internet users. Subscribers obtain an account by registering on the Internet with MSN Hotmail. MSN Hotmail requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information. However, MSN Hotmail does not verify the information provided;

b. MSN Hotmail maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts. These records include account access information, e-mail transaction information, and account application information;

c. Subscribers to MSN Hotmail may access their accounts on servers maintained and/or owned by Hotmail from any computer connected to the Internet located anywhere in the world;

d. Any e-mail that is sent to an MSN Hotmail subscriber is stored in the subscriber's "mailbox" on MSN Hotmail's servers until the subscriber deletes the e-mail or the subscriber's mailbox exceeds the storage limits preset by MSN Hotmail. If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on MSN Hotmail's servers indefinitely;

e. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to MSN Hotmail's servers, and then transmitted to its end destination. MSN Hotmail users have the option of saving a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the MSN Hotmail server, the e-mail can remain on the system indefinitely. The sender can delete the stored e-mail message thereby eliminating it from the e-mail box maintained at MSN Hotmail, but that message will remain in the recipient's

e-mail box unless the recipient deletes it as well or unless the recipient's account is subject to account size limitations;

  f. An MSN Hotmail subscriber can store files, including e-mails and image files, on servers maintained and/or owned by MSN Hotmail; and

  g. E-mails and image files stored on a MSN Hotmail server by a subscriber may not necessarily be located in the subscriber's home computer. The subscriber may store e-mails and/or other files on the MSN Hotmail server for which there is insufficient storage space in the subscriber's computer and/or which he/she does not wish to maintain in the computer in his/her residence. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the MSN Hotmail server.

### D. Stored Wire and Electronic Communication Access

  14. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

  a) Title 18, United States Code, Section 2703(a), provides:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

  b) Title 18, United States Code, Section 2703(b), provides, in part:

> (1) A government entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection-
>  (A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures

6

described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation. . .
(2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service -
    (A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
    (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c) The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. 2703(c)(1)(A). No notice to the subscriber or customer is required. 18 U.S.C. 2703(c)(3).

d) Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter -
(1) The terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section; and
(2) The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

e) Title 18, United States Code, Section 2510, provides, in part:

(8) "contents" when used in respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication...
(14) "electronic communications system" means any wire, radio, electromagnetic, photo optical or photo electronic facilities for the transmission of electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;
(15) "electronic communications service" means any service which provides the users thereof the ability to send or receive wire or electronic communications;...
(17) "electronic storage" means -
    (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and
    (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## E. Search Procedure

15. In order to ensure that Agents search only those computer accounts and or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of MSN Hotmail to assist agents in the execution of this warrant. To further ensure that Agents executing this warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be implemented:

    a. The search warrant will be presented to MSN Hotmail personnel who will be directed to isolate those accounts and files described in Attachment A;

    b. In order to minimize any disruption of computer service to innocent third parties, MSN Hotmail employees (with or without law enforcement personnel) trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Attachment A, including an exact duplicate of all information stored in the computer accounts and files described in Attachment A;[1]

    c. MSN Hotmail employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to the agent who serves this search warrant;

    d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from MSN Hotmail employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

---

[1] The absence of a law enforcement officer at the time of the actual search in the context of computer files located with an Internet Service Provider has been deemed constitutional. United States v. Bach, 310 F.3d 1063 (8th Cir. 2002), *cert. denied* 123 S. Ct. 1873 (2003).

e.  Law enforcement personnel will then seal the original duplicate of the accounts and files received from MSN Hotmail employees and will not further review the original duplicate absent an order of the Court.

## F. Basis for Facts Contained in this Affidavit

16. I make this affidavit, in part, based on personal knowledge derived from my participation in this investigation and, in part, based upon information from the following sources:

    a.  Oral and written reports about this investigation and others that I have received from United States and Dutch, Hong Kong and Czech Republic law enforcement officers, including agents with Special Agents of the Drug Enforcement Administration;

    b.  Physical surveillance conducted by Dutch, Czech and Hong Kong authorities or other foreign law enforcement authorities, which observations have been reported to me either directly or indirectly;

    c.  Intercepted e-mail messages;

    d.  Telephonic and fax intercepts conducted by Dutch and Czech authorities;

    e.  A review of log history and Internet Protocol addresses for e-mail accounts;

17. Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by Special Agents of the DEA or other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Such statements are among many statements made by others and are stated in substance, unless otherwise indicated. Similarly, information resulting from surveillance,

except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

18. I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

**G. Probable Cause**

19. Since 2004, Dutch law enforcement authorities in Holland, in conjunction with the DEA and other foreign national law enforcement agencies, have been investigating a narcotics trafficking organization which imports into Holland very large amounts of precursor chemicals used in the production of MDMA ("Ecstasy"). This organization is believed to then transport large quantities of precursor chemicals and MDMA to Canada for ultimate distribution in the United States. The Dutch investigation has identified Oi AU as the leader of the organization in Holland. The Dutch investigation has also identified various narcotics associates of AU. To date, approximately 25,000 liters of PMK, a precursor chemical used to manufacture MDMA, have been tied to this organization and seized by law enforcement. Based on this investigation, information has also led to seizures of large quantities of MDMA and the discovery of MDMA labs.

20. Law enforcement authorities in Hong Kong have identified an organization operating in China which brokers shipments of precursor chemicals such as PMK. In this investigation, Yun Lam YUEN has been identified as the leader of that organization. As set forth below, it is believed that these two organizations are working together to transport large shipments of precursor chemicals from Asia to various destinations.

21. In the Dutch investigation, judicial authorization has been obtained in Holland to intercept telephone communications of various members of the AU Organization. On May 9,

10

2005, a call was intercepted between Wang Hung TSJE, a member of the AU Organization, and YUEN, the precursor broker from China. In this conversation, a 15,000 ton shipment was discussed as was doing 3,000 or 4,000 each time. The Dutch police believe that this call actually referred to 15,000 tons of PMK, a precursor chemical used in the production of MDMA. PMK is typically shipped in 1 liter containers thus making the total shipment of 15,000 tons equal to approximately 50,000 liters of PMK. I am informed that 1 liter of PMK can be used to produce approximately 10,000 pills of MDMA. Thus, 50,000 liters of PMK could produce up to 500 million MDMA pills.

22. On June 25, 2005, in an intercepted call, TSJE advised that two individuals were leaving soon to make payments. Two days later, two members of the AU Organization, Cong Hiep Ky and Anne Marie Dieke, flew to Hong Kong. Hong Kong police have advised that these two individuals met with YUEN in Hong Kong. I believe that these two individuals went to make a payment to YUEN and arrange for the shipment of precursor chemicals.

23. On July 16, 2005, Hong Kong police surveilled Lung Kwat Choy, an individual working for YUEN. Hong Kong police observed Choy send a fax to Ah Kee in Holland. Ah Kee is believed to be a member of the AU Organization. The Hong Kong police were able to obtain a copy of the fax which contained the e-mail address "rolexstaal@hotmail.com" and the password for that account. This information was shared with Dutch authorities and judicial authorization was obtained in Holland to access this e-mail account by using the password listed in the fax transmission.

24. Upon accessing the e-mail account "rolexstaal@hotmail.com," 2 e-mails were found that were written on July 20, 2005. The first e-mail was from the account "pyamavriend@hotmail.com." The e-mails were in Dutch. This e-mail stated, "This is my new hotmail. Don't use the one from this afternoon anymore. Send my friend an e-mail. Then I can check. Pass my hotmail to pyama." In this e-mail, I believe that "pyamavriend" asked

11

"rolexstaal" to forward the new e-mail address to "pyama." I note that "pyamavriend" means Pyama's friend.    The next e-mail was sent approximately six minutes later from "pyamavriend." This e-mail stated, "The e-mail address from our friend is rolexchanlee@hotmail.com. I note that "pyamavriend" asked "rolexstaal" to communicate with "rolexchanlee" even though "pyamavriend" had the e-mail address for "rolexchanlee." Furthermore, the e-mail address for "rolexstaal" was initially passed by fax rather than by telephone. I believe that both of these methods have been used to avoid detection and interception by law enforcement. On August 12, 2005, Ah Kee, the recipient of the fax with the "rolexstaal" address, flew from Holland to Hong Kong. Dutch police believe that Kee traveled to meet with YUEN regarding the pending shipment of PMK. The Dutch have intercepted Kee discussing a bill of lading and a shipment with YUEN.

    25. Also on July 16, 2005, Hong Kong police continued to conduct surveillance on Choy. Choy was observed sending a package to Butharska Nemec in the Czech Republic. The name of the listed sender on the package was "Chan Lee." An invoice for the package listed the contents as 1 liter of caustic solution. Other paperwork associated with the invoice listed the primary ingredient in the solution as Sodium Hydroxide. I am informed that this caustic solution is readily available in the Czech republic and police in the Czech republic have advised that it would be strange to send such a chemical to the Czech Republic from China. Caustic solution, however, is used in the production of MDMA. After discussions with police in the Czech Republic, Hong Kong and Holland, I believe that this package contained a sample of PMK.

    26. Because of the suspicious nature of the package, police in the Czech Republic opened an investigation into Jan Nemec, the recipient of the package in the Czech Republic. Czech police then obtained judicial authorization to intercept communications on a fax and telephone used by Nemec. On August 21, 2005, a fax was intercepted from Nemec's fax

machine. Nemec apparently sent a fax of the certificate of analysis for the caustic solution he received to a fax machine in a flower shop in Holland.

27. On September 2, 2005, Dutch police conducted surveillance on Ky, Dieke and Kee, all members of the AU Organization. As set forth above, Kee received the fax with the "rolexstaal" address. All three individuals were observed together entering an internet café in Groningen, Holland where they sat at a computer. It is believed that they were utilizing the "pyamavriend@hotmail.com" account. That account has a listed subscriber of Henk Klaasen with no street address. The initial log-on shows that the account was created in Groningen and has been used primarily in Groningen. That account was activated on July 20, 2005, approximately 4 days after the fax was sent to Kee containing the "rolexstaal" address. The "rolexstaal@hotmail.com" account was activated on July 11, 2005, approximately 5 days before the fax was sent. That account is subscribed to Reyyu Hassam with no listed address. The account was created in the Netherlands. The "rolexchanlee" account was activated on July 19, 2005, three days after the fax was sent. Based upon the above information, I believe that all three accounts were set up to facilitate communications regarding the pending shipment from China to Holland. The "rolexchanlee" account is subscribed to Chan Lee with no listed subscriber address. The account was created in Hong Kong. As set forth above, YUEN's worker Lung Kwat Choy sent a package containing caustic solution to the Czech republic under the name "Chan Lee." Thus, I believe that "Chan Lee" is an alias used by Choy and that Choy uses the "rolexchanlee" account to conduct narcotics business. The subscriber information, thus, shows that all three accounts were set up within days of each other and that the accounts in Holland are communicating with the account in Hong Kong. I further note that the term "pyama" is believed to refer to "pajamas" or, in slang, as someone wearing the traditional Chinese clothing. Finally, I note that hotmail is a free e-mail service and does not verify any

subscriber information. In my experience, narcotics traffickers utilize hotmail to communicate because of the ease of establishing new accounts.

28. During the September 2, 2005 surveillance, log-on records confirm that "pyamavriend" logged-on during the time of the surveillance at the internet café being watched. The Dutch also accessed "rolexstaal" and observed that an e-mail was sent from "pyamavriend" during the surveillance period. The e-mail was not read by Dutch police for fear of alerting the user of "rolexstaal" that the e-mail had been accessed. Such concerns also necessitate the use of the instant search warrant rather than utilizing the method of accessing the account by the password in Holland.

29. Thus, I believe that all three e-mail accounts are being used to communicate between the YUEN Organization and the AU organization and that the communications are in furtherance of a pending shipment of PMK. I believe that the information stored in each of these e-mail accounts will further the continuing investigation into the AU Organization and may help to identify methods by which that organization transports MDMA and/or precursor chemicals into the United States. Letters have been sent to Hotmail requesting that the stored information in all three accounts be preserved in anticipation of this search warrant.

14

I. **Request for Sealing**

30. Since this investigation is continuing, disclosure of the search warrant, this affidavit, and/or this application and the attachments thereto will jeopardize the progress of the investigation. Accordingly, I request that the Court issue an order that the search warrant, this affidavit in support of application for search warrant, the application for search warrant, and the attachment thereto be filed under seal until further order of this Court, and directing MSN Hotmail not to disclose to the subscriber(s) or any other person the existence of the same application, affidavit, search warrant and attachment, until directed to do so by the Court..

_____
John Archer

Special Agent

Drug Enforcement Administration

Sworn to and subscribed before me this _____ day of September, 2005.

SEP ~~

_____
John M. Facciola

Magistrate Judge

## Attachment A

**A.    Search Procedure**

In order to ensure that agents search only the computer accounts or computer files described in this affidavit, the following procedures have been implemented:

1. The warrant will be presented to MSN Hotmail personnel who will be directed to isolate the accounts and files described below:

2. In order to minimize any disruption of computer service to innocent third parties, MSN Hotmail employees and law enforcement personnel trained in the operation of computers will create an exact duplicate of the accounts and files described below, including an exact duplicate of all information stored in the computer accounts or files described below:

3. MSN Hotmail personnel will provide the exact duplicate of the accounts and files described below and all information stored in those accounts and/or files to the agent who serves this search warrant (CD and hard copy form);

4. Law enforcement personnel will thereafter review the information stored in the accounts and files received from MSN Hotmail and then identify and copy only the information contained in those accounts and files which is authorized to be further copied as described below:

5. Law enforcement personnel will then seal the original duplicate of the accounts and files received from MSN Hotmail and will not further review the original duplicate absent an order from the Court.

**B.    Description of Accounts and Computer Files to be Copied by MSN Hotmail**

From the date of initiation to the present, for email accounts:
    (1) ROLEXSTAAL@HOTMAIL.COM;
    (2) PYAMAVRIEND@HOTMAIL.COM;
    (3) ROLEXCHANLEE@HOTMAIL.COM

1. All electronic mail stored and presently contained in, or on the behalf of, the electronic mail addresses:

Attachment A

1

2. All existing printouts from original storage of all of the electronic mail described above;

3. All transactional information for all activity of the electronic mail addresses and/or individual accounts described above, including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations.

4. All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above, including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, telephone numbers, addresses, passwords, and detailed billing records;

5. All records indicating the services available to subscriber of the electronic mail addresses and/or individual accounts described above;

6. All "contact lists" and address lists" stored and presently contained in, or on behalf of the electronic mail addresses.

## B. Information to be Further Copied by Law Enforcement Personnel

Law enforcement personnel will review and copy the following electronic mail communications:

1. All communications sent to and from the email addresses:
   (1) ROLEXSTAAL@HOTMAIL.COM;
   (2) PYAMAVRIEND@HOTMAIL.COM;
   (3) ROLEXCHANLEE@HOTMAIL.COM

2. All existing printouts from original storage of all of the electronic mail described above;

2. All of the records and information described above.

END OF ATTACHMENT

Attachment A

2